(26 Misc. Rep. 732.)

REITMAN v. CREAMER et al. (two cases).

(Supreme Court, Appellate Term.   March 24, 1899.)

FRAUDULENT CONVEYANCES.
    Where a debtor, a clothing manufacturer, agrees with the attorney of
    one of his creditors to return goods bought because of the debtor's .in-
    solvency, and early in the morning of the day after the agreement the
    attorney learns that the property is being removed, and finds all the prop-
    erty, which was woolen cloths, taken to Coney Island, in midsummer,
    and deposited with the father-in-law of an alleged purchaser, such pur-
    chaser being a real-estate dealer, and the consideration of the alleged sale
    is not clearly shown, the transaction is fraudulent as to creditors.

Appeals from municipal court, borough of Manhattan, Second dis-
trict.

Actions by Solomon Reitman against Frank D. Creamer, as sher-
iff of Kings county, and the H. B. Claflin Company, and against Frank
D. Creamer, as sheriff of Kings county, Bernard M. Ewing, and oth-
ers.   Judgment for plaintiff, and defendants appeal; both actions
to abide the result of the action against the H. B. Claflin Company.
Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-
TRITT, JJ.

Myers, Goldsmith & Bronner, for appellants.
Louis Levy, for respondent.

MacLEAN, J.   One David Garfinkel was a manufacturer of cloth-
ing in Great Jones street, on the 19th of July, 1898.   On that day,
and there, a lawyer called upon him, told him he knew he was about
to fail, and insisted upon the return of cloths recently delivered by
one client amounting to $400, and by another amounting to between
$1,100 and $1,200.   After some denials and parleying, Garfinkel
agreed to return the goods of the first client, and to return the un-
used goods of the second client, with the note of his wife, indorsed
by himself, for the balance.   When the lawyer returned for the goods
later in the day, he met one Louis Gordon, who said he was a relative
of Garfinkel, and refused to let the goods go; but when the sheriff
appeared, in answer to a telephone call, with writs of replevin, it was
agreed that the replevin suits should be discontinued, and that the
first arrangement would be carried out.   It was between 5 and 6
o'clock when the lawyer left.   Quite a stock of merchandise was on

hand,—manufactured goods, and cloth, cut and uncut. Cutters were working, men were working, and Garfinkel himself was at work. Between 8 and 8:30 the next morning the lawyer was brought back on information from the person whom he left in charge of the goods that the place was being cleaned out. He found nothing but the shelves. Detectives discovered the goods at Coney Island, in a place called by the police the "House of All Nations." There the lawyer referred to above saw the goods of his clients already taken out of the cases, and had the arrangement of the day before finally carried out. There, also, the representatives of the merchants above named as defendants found and identified the goods, still uncut, delivered by their respective houses to Garfinkel, one lot within a week, the other within a fortnight, previously; which goods, the subject of these actions, thereupon were taken by the sheriff of Kings county under requisitions in replevin. Upon such taking, as a conversion, the present actions are based.

In explanation of the removal of the goods—woolen goods of various kinds—to Coney Island in midsummer, Gordon testified that he was engaged in real estate at 159 Canal street, and not a dealer in cloths or clothing; that his father-in-law, Solomon Reitman, the plaintiff above named, lived with him; that, on the 19th of July, Garfinkel sent to him, and explained to him the circumstances that a man wanted to take goods that did not belong to him at all, and so Gordon bought the goods, as he said, paying therefor $1,500,—$500 by an old account and $1,000 by check,—although Gordon said elsewhere that he could not write at all; that, as he did not want to store the goods bought of Garfinkel, he sold a part of them to his father-in-law,—about seven cases,—for $750, and had them addressed by the expressman, and sent them, paying the expressman $12 for the transportation, to Coney Island, where Solomon Reitman had no place of any kind, but where his son William was a tailor. Thus it was apparent that the professed transfer to Gordon of the merchandise belonging to the clients of the lawyer who called upon Garfinkel was made with the intent to hinder and delay these creditors of Garfinkel, and was therefore void as against them. The transfer of the goods which were of the persons named above as defendants with the sheriff was similarly objectionable. The very circumstance which Gordon said induced the transfer to him, the nocturnal removal of the goods from the city to the seashore summer resort, the improbable reason given for so doing, the nonproduction of bills, aside from the circumstances shown in the evidence on the part of the defendants, indicate that as to these goods, also, Gordon was a party to a transfer of property with intent to hinder, delay, or defraud creditors. The title and appearance of title set up for Reitman is quite as scanty as that of Gordon. He neither presented himself to the court, nor was any bill of sale presented for him. He never saw the goods, nor knew of, or had a memorandum of, the contents of the cases. He lived in the same house with Gordon, who in this acted for him, and who gave as the reason for going to the Reitmans that he had to please them. Clearly, the plaintiff had not the concurrent rights of title and of possession necessary to the main-

tenance of these actions. The judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

Judgment reversed, and new trial ordered, with costs to abide the event.

FREEDMAN, P. J. (concurring). The plaintiff in this action claims to be the owner of certain personal property, by a purchase from his son-in-law, one Louis Gordon, who claims to have purchased the same property from one Garfinkel. The goods in question were taken under replevin process, by the sheriff of Kings county, issued upon complaint of several creditors of Garfinkel, and plaintiff sues the sheriff and such creditors for conversion. The plaintiff was not sworn on behalf of the plaintiff. The relationship of the plaintiff to Gordon, and Gordon's friendship and close intimacy with Garfinkel, together with all the other facts and circumstances as disclosed by the testimony and referred to in the opinion of Mr. Justice Mac-LEAN, clearly indicate a scheme on the part of Garfinkel, aided and assisted by Gordon and the plaintiff, with full knowledge on their part, to delay, hinder, and defraud his creditors.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellants to abide the event.

LEVENTRITT, J., concurs.